UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEIDI BURT, et al.,<br><br>            Plaintiffs,<br><br>      v.<br><br>TRAVELERS COMMERCIAL INSURANCE COMPANY,<br><br>            Defendant. | Case No.  22-cv-03157-JSC<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 13 |

Plaintiffs filed this insurance dispute in Contra Costa County Superior Court. (Dkt. No. 1 at 4–13.)[1] Defendant removed to federal court and moves to dismiss. (Dkt. No. 13.) After carefully considering the parties' briefing, and having had the benefit of oral argument on August 16, 2022, the Court GRANTS the motion.

## COMPLAINT ALLEGATIONS

Plaintiffs are siblings who inherited digital property valued at $339,000 from their father, Harry Burt. In April 2020, Mr. Burt opened a Coinbase account and started buying digital property, including Bitcoin, Ethereum, Chainlink, and Yearn Finance. Mr. Burt died in November 2020 and left his entire estate to his two children, Plaintiffs. In April 2021, hackers took control of Mr. Burt's email address and Coinbase account. Within 24 hours, they transferred the digital property from Mr. Burt's Coinbase to their own electronic "wallet."

Mr. Burt bought homeowners insurance from Defendant. Policy No. 991376774 633 1 was in effect from June 16, 2020 to June 16, 2021, and provides $555,800 in "personal property"

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1  coverage. (Dkt. No. 1 at 5, 15–16, 53.)[2] The policy covers losses of personal property due to
2  "theft," including "attempted theft and loss of property from a known place when it is likely that
3  the property has been stolen." (*Id.* at 5–6, 61.) Under the policy, Defendant "insure[s] the legal
4  representative of the deceased but only with respect to the premises and property of the deceased
5  covered under the policy at the time of death." (*Id.* at 6, 75.)

6  Plaintiffs submitted a claim for the theft of their digital property to Defendant in June
7  2021. Defendant hired an investigator, ClaimPro, which demanded that Plaintiffs spend their own
8  time retrieving documents and otherwise investigating their own claim. ClaimPro determined that
9  the loss was due to theft. In November 2021, on a phone call, Defendant's lawyer told Plaintiffs
10 that an exclusion applied and mentioned the policy's "currency" and "securities" exclusions, but
11 said that Defendant had not yet decided which exclusion applied. Plaintiffs emailed Defendants
12 that same day, again a few days later, and again in January 2022, requesting a determination in
13 writing and requesting the name of the lawyer who they spoke to on the phone. Defendant has not
14 provided a written determination, given the name of the lawyer Plaintiffs requested, or provided
15 any coverage.

16 Plaintiffs bring claims for declaratory relief, breach of contract, breach of the implied
17 covenant of good faith and fair dealing, and violations of California's Unfair Competition Law.
18 (*Id.* at 9–12.) Defendant moves to dismiss all claims for failure to state a claim.

19                                    **DISCUSSION**

20 **I.   BREACH OF CONTRACT**

21 Defendant argues Plaintiffs fail to state a claim for breach of contract because no coverage
22 was owed under the policy as a matter of law. Under California law, "interpretation of an
23 insurance policy is a question of law that is decided under settled rules of contract interpretation."
24 *State v. Cont'l Ins. Co.*, 281 P.3d 1000, 1004 (Cal. 2012); *see Welles v. Turner Entm't Co.*, 503
25 F.3d 728, 738 (9th Cir. 2007) (California law applies). "The fundamental goal of contractual
26 interpretation is to give effect to the mutual intention of the parties." *Bank of the W. v. Superior*

---

[2] The Court may take judicial notice of the insurance policy attached to the complaint. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

*Court*, 833 P.2d 545, 552 (Cal. 1992). "Such intent is to be inferred, if possible, solely from the written provisions of the contract." *AIU Ins. Co. v. Superior Court*, 799 P.2d 1253, 1264 (Cal. 1990). "If contractual language is clear and explicit, it governs." *Bank of the W.*, 833 P.2d at 552. Courts must interpret coverage clauses "broadly so as to afford the greatest possible protection to the insured" and interpret "exclusionary clauses . . . narrowly against the insurer." *State Farm Mut. Auto. Ins. Co. v. Partridge*, 514 P.2d 123, 128 (Cal. 1973). Any doubt must be resolved in the insured's favor. *Horace Mann Ins. Co. v. Barbara B.*, 846 P.2d 792, 796 (Cal. 1993).

Here, Coverage C—Personal Property "insure[s] for direct physical loss to property." (Dkt. No. 1 at 41, 61.) It "cover[s] personal property owned or used by an 'insured' while it is anywhere in the world." (*Id.* at 53.) In a "Special Limits of Liability" section, the policy sets liability limits for categories of personal property, including:

> $1,500 on securities, accounts, deeds, evidence of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

(*Id.* at 54.) "Personal property" is defined to exclude "Animals, birds, or fish," "Motor vehicles," "Aircraft," "Hovercraft," "Property of . . . boarders," "Property in an apartment regularly rented," "Property rented," "Business data," "Credit cards," "Grave markers," and "Water." (*Id.* at 54–55 (cleaned up).) The "Business data" exclusion notes: "We do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market." (*Id.* at 55.) The policy covers direct physical loss "caused by any of the following perils," including "theft" and "attempted theft and loss of property from a known place when it is likely that the property has been stolen." (*Id.* at 61.) Thus, policy coverage here requires, at a minimum, (1) "direct physical loss to" (2) "personal property."

Courts applying California law have interpreted "direct physical loss" to require "physical alteration" of or to the property. *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 891–92 (9th Cir. 2021). "That the loss needs to be 'physical,' given the ordinary meaning of the term, is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental

3

1   economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property."
2   *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 115 Cal. Rptr. 3d 27, 37 (Cal.
3   Ct. App. 2010) (cleaned up).  Thus, in a case considering data lost from a database crash:

> [T]he[] words ["direct physical loss"] . . . impart a clear and explicit meaning in the context of the losses claimed against the insurance policy. . . .  The word "physical" is defined, inter alia, as "having material existence" and "perceptible esp. through the senses and subject to the laws of nature."  "MATERIAL implies formation out of tangible matter."  "Tangible" means, inter alia, "capable of being perceived esp. by the sense of touch."  Thus, relying on the ordinary and popular sense of the words, we say with confidence that the loss of plaintiff's database does not qualify as a "direct physical loss," *unless* the database has a material existence, formed out of tangible matter, and is perceptible to the sense of touch.
>
> . . . We fail to see how *information*, *qua* information, can be said to have a material existence, be formed out of tangible matter, or be perceptible to the sense of touch. . . .  Plaintiff did not lose the tangible material of the storage medium.  Rather, plaintiff lost the stored *information*.

*Ward Gen. Ins. Servs., Inc. v. Emp'rs Fire Ins. Co.*, 7 Cal. Rptr. 3d 844, 850–51 (Cal. Ct. App. 2003) (quoting dictionary); *see MRI Healthcare*, 115 Cal. Rptr. 3d at 38 (finding no "direct physical loss" of MRI machine that, "[i]n effect," "was turned off and could not be turned back on").

Here, as alleged in the complaint, Plaintiffs' loss of their cryptocurrency is not, as a matter of law, a direct physical loss.  They do not, and cannot, allege facts that give rise to a plausible inference that cryptocurrency "has a material existence, formed out of tangible matter, and is perceptible to the sense of touch."  *Ward*, 7 Cal. Rptr. 3d at 850; *see also Ox Labs v. Bitpay, Inc.*, 848 F. App'x 795, 796 (9th Cir. 2021) ("The California Supreme Court has yet to decide whether Bitcoins can be specifically recovered in a conversion action.  Based on our review of California authorities, however, we conclude that they cannot.  Specific recovery is unavailable when the converted property is intangible. . . . *Because the converted property here, cryptocurrency, is intangible*, Ox Labs cannot specifically recover its Bitcoins from BitPay." (emphasis added)). That Plaintiffs lost control of the cryptocurrency is not direct physical loss as a matter of California law.  *See Mudpie*, 15 F.4th at 892 ("[Plaintiff] urges us to interpret 'direct physical loss of or damage to' to be synonymous with 'loss of use.'  We cannot endorse [Plaintiff's]

4

1    interpretation because California courts have carefully distinguished 'intangible,' 'incorporeal,'
2    and 'economic' losses from 'physical' ones.").

3    Plaintiffs' attempt to distinguish *Ward* on the grounds that it involved "merely a cost to
4    restore lost data," (Dkt. No. 15 at 17), misreads *Ward*. *Ward*, which this Court is bound to follow
5    absent some evidence that the California Supreme Court would hold otherwise, *see Salazar v.
6    McDonald's Corp.*, 944 F.3d 1024, 1029 (9th Cir. 2019), specifically held that the damages
7    flowing from the lost data was not recoverable because it did not qualify as a "direct physical loss"
8    given that the data did not "have a material existence, . . . formed out of tangible matter" and was
9    not "perceptible to the sense of touch." *Ward*, 7 Cal. Rptr. 3d at 851. The same result is required
10   here. Plaintiffs' citation to cases holding that cryptocurrency is property in various contexts is
11   unpersuasive. (*See* Dkt. No. 15-1 at 3–8 (property under an insurance policy; unpublished state
12   court case applying Ohio law)); *Ox Labs, Inc. v. Bitpay, Inc.*, No. CV 18-5934-MWF (KSx), 2020
13   WL 1039012 (C.D. Cal. Jan. 24, 2020) (property subject to conversion); *Commodity Futures
14   Trading Comm'n v. McDonnell*, 287 F. Supp. 3d 213, 228 (E.D.N.Y. 2018) (commodities under
15   Commodity Exchange Act). None are on point because they do not address the meaning of "direct
16   physical loss" under California law.

17   Plaintiffs' insistence that "permanent dispossession" of property may be an alternative to
18   the "physical alteration" requirement fares no better. In *Mudpie*, the Ninth Circuit noted that the
19   complaint "does not identify a distinct, demonstrable, physical alteration of the property, and it
20   does not allege that Mudpie was permanently dispossessed of its property." 15 F.4th at 892
21   (citation omitted). This was a dictum because it was not necessary to the holding. *See also id.* at
22   891 n.5 (declining to discuss *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, No.
23   CV 17-04908 AB (KSx), 2018 WL 3829767 (C.D. Cal. July 11, 2018), cited "for the proposition
24   that 'direct physical loss' can include permanent dispossession of property"). In any event, the
25   case involved "tangible property"; namely, a brick and mortar store. Similarly, while in *Total
26   Intermodal* the district court interpreted "direct physical loss of or damage to" property to include
27   "permanent dispossession," 2018 WL 3829767, at *2–4, it also involved tangible property—cargo.
28   Finally, that the Policy specifically covers "prerecorded computer programs available on

5

1  the retail market," (Dkt. No. 1 at 55), does not suggest that Plaintiffs have plausibly alleged that
2  there was direct physical loss to the cryptocurrency.  Plaintiffs have not shown that there can never
3  be no direct physical damage to a prerecorded computer program available on the retail market
4  such that the provision somehow creates an ambiguity as to the meaning of "direct physical loss
5  to."  Accordingly, Plaintiffs fail to state a claim for breach of contract.

## II.   BREACH OF THE IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

"[B]ecause a contractual obligation is the underpinning of a bad faith claim, such a claim cannot be maintained unless policy benefits are due under the contract. . . .  [T]he covenant is based on the contractual relationship between the insured and the insurer."  *Waller v. Truck Ins. Exch.*, 900 P.2d 619, 638–39 (Cal. 1995).  Because the complaint does not allege "direct physical loss," there is no policy coverage as a matter of law.  For this reason, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fails alongside their breach of contract claim.

"[T]here may be unusual circumstances in which an insurance company could be liable to its insured for tortious bad faith despite the fact that the insurance contract did not provide for coverage."  *McMillin Scripps N. P'ship v. Royal Ins. Co.*, 19 Cal. App. 4th 1215, 1222 (Cal. Ct. App. 1993).  Such circumstances include, for example, where the plaintiff's insurer told him he did not have to do his own investigation and refused to share the results of its own investigation, which showed that the loss was caused by another insured whose policy would have given the plaintiff more coverage.  *See id.* at 1222–23 (citing *Rawlings v. Apodaca*, 726 P.2d 565 (Ariz. 1986)).  Such circumstances do not include, for example, the insured incurring their own investigation costs or the insurer conducting an inadequate investigation.  *See id.* at 1219, 1223 ($150,000 in investigation costs); *Murray v. State Farm Fire & Cas. Co.*, 219 Cal. App. 3d 58, 65–66 (1990) (inadequate investigation).  Plaintiffs do not cite a case holding a bad faith claim is available as a matter of law under circumstances similar to theirs.  Therefore, in light of the strong background presumption that a bad faith claim corresponds to the terms of insurance policy coverage, Plaintiffs' claim fails as a matter of law.

\* \* \*

Because the complaint alleges a loss not covered by the insurance policy, Plaintiffs fail to state a claim for breach of contract or breach of the implied covenant of good faith and fair dealing.  Accordingly, they also fail to state a derivative claim under California's Unfair Competition Law and for declaratory relief.

## CONCLUSION

Defendants' motion to dismiss is GRANTED with leave to amend.  Plaintiffs may file an amended complaint on or before September 15, 2022.  If no amended complaint is filed by that date, judgment will be entered.  The initial case management conference set for August 31, 2022 is VACATED.

This Order disposes of Docket No. 13.

**IT IS SO ORDERED.**

Dated: August 16, 2022

JACQUELINE SCOTT CORLEY
United States District Judge